UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA K. SANDERS,

      Plaintiff,                Case No. 2:23-cv-10033

                                  District Judge Laurie J. Michelson

v.                              Magistrate Judge Anthony P. Patti

HIRE COUNSEL,

      Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (ECF No. 13)

I.    **RECOMMENDATION**:  The Court should **GRANT** Defendant's motion to dismiss (ECF No. 13).

II.    **REPORT:**

A.    **Background**

Attorney Brenda K. Sanders (P37845) was admitted to the State Bar of Michigan on May 30, 1985.  *See* https://sbm.reliaguide.com/lawyer/0-MI-Brenda-Sanders-43842.  Her name appears on the docket of multiple cases within the Eastern District of Michigan, including one where she describes serving "as an elected Judge to the 36th District Judicial District Court from January 1, 2009, until July 1, 2015[,]" when her "law license was placed in 'inactive' status[.]" *Sanders v. Michigan Attorney Discipline Board*, Case No. 2:23-cv-10778-MFL-

KGA (ECF No. 12, ¶¶ 3, 17).[1]  According to Sanders, in May 2019, she petitioned for reinstatement to active status and, in December 2019, the Michigan ADB conducted a hearing; however, on or about March 31, 2020, the Michigan ADB "issued an Order Denying the Plaintiff's Reinstatement of Law License to 'Active Status[.]'"  Case No. 2:23-cv-10778-MFL-KGA (ECF No. 12, ¶¶ 20, 21, 43).  To date, the State Bar of Michigan lists Sanders' license as inactive.  *See* www.michbar.org, "Member Directory," last visited Nov. 29, 2023.  The Court takes judicial notice of these readily verifiable facts and pronouncements with regard to Plaintiff's license to practice law.  *See* Fed. R. Evid. 201(b)(2),(c)(1).

On April 4, 2023, Sanders filed a lawsuit against the Michigan ADB, whose September 2023 motion to dismiss is pending.  *See* Case 2:23-cv-10778-MFL-KGA (ECF No. 20).

### B.    Instant Employment Discrimination Lawsuit

Sanders has filed other employment discrimination lawsuits in this Court.[2] On January 5, 2023, Sanders filed the instant lawsuit against Hire Counsel, which

---

[1] *See also In re Sanders*, Case No. 150039, 498 Mich. 856, 865 N.W.2d 30 (July 1, 2015).  On November 30, 2015, Michigan's Attorney Discipline Board (ADB) issued an order transferring Sanders' license to inactive status pursuant to M.C.R. 9.121(A) "for an indefinite period and until further order of the Board."  *See In Re: Brenda K. Sanders*, Case 2:01-mc-73929-GER (ECF Nos. 9-2, 9-3).

[2] *See*, *e.g.*, *Sanders v. Wayne State University*, Case No. 2:22-cv-12025-MFL-CI (E.D. Mich.) (pending March 2023 motion to dismiss and for judgment on the pleadings and request for filing injunction (ECF No. 27)); *Sanders v. Robert Half*

allegedly "advertises itself as an on-demand legal staffing agency[,]" and "often advertises positions for 'Document Review Attorneys' and even offers to pay bonuses for third parties that recruit qualified talent to fill its positions."  (ECF No. 1, ¶¶ 41, 51-52.)

Plaintiff alleges that she "sought employment with the Defendant, Hire Counsel . . . for the position of 'Attorney' and 'Lawyer' and other [unspecified] legal and administrative positions, from approximately 2014, until the present." (ECF No. 1, ¶ 9; *see also id.*, ¶¶ 33, 57, 84.)  She focuses on the specific job of "document review attorney," and alleges that Defendant advertised for this position. (*Id*, ¶ 52.)  More specifically, Plaintiff alleges that, "on or about June, 2022, [she] applied for the position of 'Document Review Attorney', which was displayed on the Defendant's employment website."  (ECF No. 1, ¶ 5.)  She also contends "the last failure to hire took place on or about October, 2022, after the Plaintiff applied for employment with the Defendant[,]" and "[t]he Defendant continued its unlawful practice of refusing to communicate or hire [her] for the advertised position."  (*Id*., ¶ 33.)

---

*International, Inc.*, 2:22-cv-12532-GAD-DRG (E.D. Mich.) (pending May 2023 and June 2023 dispositive motions (ECF Nos. 38, 42)); *Sanders v. Michigan Supreme Court, et al*., Case 2:16-cv-12959-AC-RSW, wherein Judge Cohn wrote that, "While the Court denied [Plaintiff's] motion [for a preliminary injunction] without a response by the City of Detroit, the motion was not grounded in law and was essentially frivolous." (ECF No. 84 therein, PageID.1320.)

Plaintiff also alleges she "was qualified to work for the Defendant on a temporary and/or permanent basis." (*Id*., ¶ 26; *see also id*., ¶¶ 13-17.) While she admits that her law license is currently in "inactive" status, she alleges Defendant "denied [her] opportunities for employment, even when her law license was in an 'active' status." (*Id*., ¶ 18.) Moreover, Plaintiff alleges that Defendant "discriminated against [her] when it required that applicants have an 'active' status in order to secure placements, even though having an active bar license had no bearing, whatsoever, on the attorney document review process[,]" and that "requiring an 'active' status bar license was a pre-tense for discrimination against [her] . . . ." (*Id*., ¶¶ 19-20.)

According to Plaintiff, although she "responded to the Defendant's numerous employment opportunities over a period of several years, the Defendant never hired [her] for any employment, at any time." (*Id*., ¶ 32; *see also id*., ¶ 25.) Plaintiff alleges her race and age were "motivating factors" for Defendant's "failure to contact, interview or hire [her]," and further alleges Defendant "has not offered any legitimate justification to rebut or override [her] assertions of discrimination . . . ." (ECF No. 1, ¶¶ 34-36.)

Plaintiff's causes of action include: (1) failure to hire the Plaintiff; (2-3) discrimination under 42 U.S.C. § 1981 ("Equal rights under the law"); (4) violation of the Age Discrimination in Employment Act of 1967 (ADEA); (5) race, age, and

sex discrimination under Michigan's Elliott-Larsen Civil Rights Act (ELCRA),

Mich. Comp. Laws §§ 37.2101, *et seq*.; and, (6) intentional infliction of emotional

distress.  (ECF No. 1, ¶¶ 53-102.)

### C.    Instant Motion

Judge Michelson has referred this case to me for pretrial matters.  (ECF No.

11.)  Currently before the Court is Hire Counsel's April 7, 2023 motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 13.)

Plaintiff's response was due on May 5, 2023.  (ECF No. 16.)  Plaintiff filed

responses on May 5, 2023 (ECF No. 17) and May 11, 2023 (ECF No. 18).  On

May 11, 2023, the Court entered a text-only order, which interpreted the latter

response as an amendment of the earlier one; accordingly, the Court struck the

earlier response but accepted the latter response.  (ECF No. 19.)  Hire Counsel

filed a reply on June 2, 2023.  (ECF No. 20.)  This motion is now ready for

decision.

### D.    Standard

#### 1.  Motions to dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(concluding that a plausible claim need not contain "detailed factual allegations,"

but it must contain more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action"). Facial plausibility is established "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678. "The plausibility of an inference depends on a host of considerations,

including common sense and the strength of competing explanations for the

defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727

F.3d 502, 503 (6th Cir. 2013).

### 2. *Pro se* litigants

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

6

arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[3]

### 3.  Plaintiff's legal background

Moreover, even if her license is currently inactive, in light of this particular

Plaintiff's legal background – including her 1983 Juris Doctor (ECF No. 1, ¶ 16),

her admission to the State Bar of Michigan in 1985 (*id.*, ¶ 14), her operation of a

private practice from 1986-2008 (*id.*, ¶ 15), and her above-described service as a

judge from 2009-2015 — she may not necessarily be "entitled to the liberal

construction generally afforded to the pleadings of *pro se* plaintiffs."  *Ponte v.*

*Chase Bank USA, N.A.*, No. 12-13901, 2013 WL 5818560, at *4 (E.D. Mich. Oct.

29, 2013) (Cox, J., accepting and adopting report and recommendation of Grand,

M.J.).  *See also Ross v. Bachand*, No. 14-CV-14122, 2015 WL 4644912, at *2

(E.D. Mich. Aug. 5, 2015) (Ludington, J.) (same); *Underhill v. Royer*, No. 14-CV-

14768, 2015 WL 2384052, at *2 n.3 (E.D. Mich. May 19, 2015) (Ludington, J.)

(same), *aff'd* (6th Cir. May 12, 2016); *and Dobronski v. Alarm Mgmt. II, L.L.C.*,

No. 18-11055, 2020 WL 6780267, at *4 (E.D. Mich. Nov. 18, 2020) (Cleland, J.)

---

[3] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL
2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's
failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic
pleading requirements, including Rule 12(b)(6).").

(Plaintiff, "while appearing *pro se*, is trained in the law.  He previously served as a judge in Arizona.")

### E.  Analysis

#### 1.  Federal law causes of action (Counts I, II, III & IV)

##### a.  <u>Counts I and III</u>:  Title VII (42 U.S.C. §§ 2000e, *et seq*.)

###### i.  Count I:  Failure to hire based on race (42 U.S.C. § 2000e-2)

Plaintiff describes herself as an African American female.  (ECF No. 1, ¶¶ 54, 62, 76, 91.)  Without referencing a particular statute, Plaintiff's first cause of action alleges that "Defendant *intentionally* discriminated against [her], when it failed to hire [her] for advertised positions for which [she] applied and for which [she] was qualified[,]" "Plaintiff was subsequently rejected for each and every position on Defendant's website for which she applied[,]" and "the cited failures to hire the Plaintiff took place over a period of years, starting in approximately 2014 or 2015."  (ECF No. 1, ¶¶ 55, 56, 57 (emphasis added).)  Plaintiff further alleges that "a failure to hire claim is a potential employee's allegation that the employer would have hired him or her *but for* its reliance on one of the protected categories

or other conduct in violation of anti-discrimination laws." (*Id.*, ¶ 58 (emphasis added).)[4]

Plaintiff expressly mentions discrimination based on race and age. (*Id.*, ¶ 59.) While this first cause of action does not mention a particular statute, Plaintiff's pleading "reserves the right to amend . . . to add her claims under the Civil Rights Act of 1964." (ECF No. 1, ¶ 48.) Assuming Plaintiff would proceed under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2000e-17, discrimination based on age is not among the listed categories, which include "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2. Instead, age discrimination will be addressed below within the discussion of the ADEA claim (Count IV). That said, the Sixth Circuit has observed:

> . . . in a failure-to-hire case, the Title VII plaintiff may establish a prima facie case of racial discrimination "by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications."

---

[4] Perhaps in response to this particular allegation (ECF No. 1, ¶ 58), Defendant states in its reply: "Plaintiff has not alleged that the job was given to another person under circumstances giving rise to an inference of unlawful discrimination." (ECF No. 20, PageID.107.) Defendant does not cite authority establishing such a requirement; therefore, the Court assumes it is mentioned as one potential basis for showing an inference.

*Shah v. Gen. Elec. Co.*, 816 F.2d 264, 267–68 (6th Cir. 1987) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Moreover, "[t]o recover under a disparate-treatment theory of employment discrimination, Plaintiffs must show that [Defendant] treated them less favorably than others because of their *race, color, religion, sex, or national origin*."  *Tartt v. Wilson County, Tenn.*, 982 F.Supp.2d 810, 816 (M.D. Tenn. 2013) (emphasis added) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796 n. 4 (1973)) (citing 42 U.S.C. § 2000e–2(a)(1)).

Although Plaintiff alleges that "an active bar license had no bearing . . . on the attorney document review process[,]" and that "requiring an 'active' status bar license was a pre-tense for discrimination against [her][,]" (ECF No. 1, ¶¶ 19, 20) – the latter of which is implausible – her allegations that she applied for positions as an "attorney" or "lawyer" and that her law license is presently "inactive" (*id*., ¶¶ 5, 9, 18) cast serious doubt on whether she "was qualified for a job for which the employer was seeking applicants[.]"  *Shah*, 816 F.2d at 267-268.  Nonetheless, even assuming, *arguendo*, that Plaintiff's complaint sufficiently alleges a 42 U.S.C. § 2000e-2 racial discrimination claim, such a claim is subject to Title VII's administrative exhaustion requirement, Section 2000e-5, which will be discussed below.

ii.    **Count III:  42 U.S.C. § 2000e-3(a) (Retaliation)**

Plaintiff's third cause of action, although purportedly based on 42 U.S.C. § 1981, seems like yet another Title VII claim, this time alleging retaliation. Plaintiff alleges that she "complained of race discrimination by Defendant[,]" she "has applied for various employment opportunities [*e.g.*, a "Document Review Attorney," "JD Candidate (Lawyer)," and "other legal positions advertised by the Defendant"] by email and on the Defendant's employment mobile app[,]" but she "has been denied for every employment opportunity for which she applied."  (ECF No. 1, ¶¶ 68, 69, 70, 71.)  Plaintiff contends that "her race" was "a motivating factor for Plaintiff's denial of employment opportunities . . . ."  (ECF No. 1, ¶ 72.)  Although Plaintiff claims this cause of action – the title of which mentions race discrimination, retaliation, and "failure to promote," and the content of which includes "failure to be hired" – is based on Section 1981 (*see id.*, ¶ 73), her use of the word "retaliation" suggests she intends to base Count III on Title VII, perhaps the subsection that provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has *opposed any practice made an unlawful employment practice* by this subchapter, or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis added).[5]  Assuming Plaintiff intends such a claim, it is subject to Title VII's administrative exhaustion requirement, Section 2000e-5, which will be discussed below.

### iii.    42 U.S.C. § 2000e-5 (Administrative exhaustion)

Defendant makes substantive arguments – *i.e.*, Plaintiff "fail[ed] to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6) – about Plaintiffs first, second, and/or third causes of action (ECF No. 13, PageID.49-50), as does Plaintiff (ECF No. 18, PageID.95-98).  (*See also* ECF No. 20, PageID.104-107.)  Indeed, Plaintiff concedes that "[o]ther females regularly work for the Defendant and consequently, the Plaintiff has excluded sexual discrimination as a partial reason for denying her employment opportunities[,]" and concedes that "Defendant may not be guilty of sex discrimination against her."  (ECF No. 18, PageID.96, 98.)  (*See also* ECF No. 20, PageID.103-104.)

However, assuming Plaintiff intended to bring her race or retaliation claims in accordance with Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2000e-17

---

[5] Of Count III's thirteen paragraphs (ECF No. 1, ¶¶ 67-79), the initial eight follow a pattern similar to the paragraphs in Counts I, II, IV & V (*compare id.*, ¶¶ 67-74; *with id.*, ¶¶ 53-60, 61-65, 80-86, 87-94), while the latter five seem out of place (*see id.*, ¶¶ 75-79).  In fact, these latter paragraphs in Count III somewhat resemble paragraphs within Count V (ELCRA).  (*Compare id.*, ¶¶ 75-79; *with, id.*, ¶¶ 90-94.)  Thus, this report and recommendation does not separately address ¶¶ 75-79.

– namely Section 2000e-2 (Count I) or Section 2000e-3 (Count III) – the more pressing issue is whether Plaintiff has alleged "she filed an EEOC complaint," which Defendant argues "is a precondition to filing suit." (ECF No. 13, PageID.51.) As the Supreme Court has explained: "Once the administrative process has been exhausted and the EEOC sends the complainant a right-to-sue letter, a civil action in federal district court must be filed within 90 days of receipt of the right-to-sue letter." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 392 n.11 (1977) (discussing the 180-day deadline in § 2000e-5(e) and the 90-day deadline in § 2000e-5(f)(1) (1970 ed., Supp. V)). *See also Lakhani v. City of Inkster*, No. 18-14038, 2020 WL 1508372, at *2 (E.D. Mich. Mar. 30, 2020) (Edmunds, J.) (discussing the 300-day deadline in 42 U.S.C. § 2000e-5(e)(1) and the 90-day deadline in § 2000e-5(f)(1)). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (referencing, *inter alia*, 42 U.S.C. § 2000e-5(f)(1)).

Plaintiff responds to Defendant's exhaustion argument three-fold. (ECF No. 18, PageID.98-100.) First, Plaintiff relies upon a recent Supreme Court decision, which held that the Individuals with Disabilities Education Act's (IDEA's) "administrative exhaustion requirement [*i.e.*, 20 U.S.C. § 1415(l)] applies *only* to suits that 'see[k] relief ... also available under' IDEA." *Perez v. Sturgis Pub. Sch.*,

598 U.S. 142, 147 (Mar. 21, 2023) (emphasis in original) (quoting 20 U.S.C. §

1415(l)).  (ECF No. 18, PageID.98.)  Yet, Plaintiff's interpretation of *Perez* – as

standing for the notion that "failure to exhaust administrative dispute resolution

procedures is no longer a bar to filing a lawsuit in a court of law[,]" (ECF No. 18,

PageID.85 ¶ 3) – is inaccurate.  Moreover, in this lawsuit, Plaintiff does not allege

either an Americans with Disabilities Act (ADA) claim – as did *Perez* – or an

IDEA claim.[6]

　　Second, Plaintiff extensively quotes from the U.S. Equal Employment

Opportunity Commission's "handbook" on "filing a lawsuit in federal court."

(ECF No. 18, PageID.98-99.)  *See* https://www.eeoc.gov/federal-sector/filing-

lawsuit-federal-court (last visited Nov. 30, 2023).  But Plaintiff misconstrues the

EEOC's guidance that, "[i]f you file a lawsuit, the agency or EEOC will stop

processing your complaint."  (*Id*.)  Perhaps, as Plaintiff says, "filing a lawsuit

terminates an EEOC review of employment discrimination claims[.]"  (ECF No.

18, PageID.99.)  However, this guidance from the EEOC does not nullify §§

2000e-5(e)(1),(f)(1)'s requirement(s) to file a charge with the Commission prior to

filing suit.  (*See also* ECF No. 20, PageID.107-108.)

---

[6] The IDEA is codified at 20 U.S.C. §§ 1400-1482, and the ADA is codified at 42
U.S.C. §§ 12101-12213.

Finally, in the conclusion of her response, Plaintiff requests that the Court "dismiss this instant case 'without prejudice' until the Plaintiff can file a complaint with the EEOC to review her claims contained herein[,]" and represents she "will request and await the issuance of a 'Right to Sue Letter' before proceeding further with her claims of employment discrimination." (ECF No. 18, PageID.100.) Defendant contends that "all of the incidents alleged in Plaintiff's complaint occurred more than 180 days ago, and *virtually* all of the alleged incidents occurred more than 300 days ago, with a potential limited exception." (ECF No. 20, PageID.108 (emphasis added).) This may or may not be true, considering the 180 and 300 day periods described in Title VII (42 U.S.C. § 2000e-5(e)(1)) – or the ADEA (29 U.S.C. § 626(d)(1)), as discussed below with respect to Count IV – and the somewhat specific dates mentioned in Plaintiff's complaint, namely June 2022 and October 2022 (ECF No. 1, ¶¶ 5, 33). Nonetheless, where Plaintiff tacitly admits she did not file an EEOC charge, and where her pleading lacks more specific dates, the Undersigned declines to comment upon the issue of whether it is futile for Plaintiff to attempt compliance with Section 2000e-5. Dismissal of Counts I and III without prejudice will let Plaintiff test the waters elsewhere, as she herself suggests; however, she may not return to this Court to pursue a Title VII claim without evidence that she has complied with Section 2000e-5.

**b.      Count II:  42 U.S.C. § 1981 ("Equal rights under the law")**

Plaintiff's second cause of action alleges that Defendant discriminated against her – on the bases of race, age, and sex – "with regard to denial of enjoyment of all benefits, privileges, terms and conditions of employment[.]" (ECF No. 1, ¶¶ 61-66.)  Here, Plaintiff seems to invoke the provision that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," – as is "enjoyed by white citizens," – which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(a),(b).

Preliminarily, the Court notes Defendant's speculation that Plaintiff relies upon 42 U.S.C. § 1981, "because it has many advantages over Title VII for a Plaintiff, including no requirement to pursue administrative relief."  (ECF No. 13, PageID.49.)  Even so, the elements of a Section 1981 claim include:  "'(1) plaintiff is a member of a racial minority, (2) defendant intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).'"  *Burton v. Plastics Rsch. Corp.*, 134 F. Supp. 2d 881, 885 (E.D. Mich. 2001) (Gadola, J.) (quoting *Johnson v. Harrell,* No. 97–5257, 1998 WL 57356, at *2 (6th Cir. Feb.2, 1998)).  Moreover, "[t]o prevail [under Section 1981]

16

… plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

### i. "But for" causation

Plaintiff alleges Defendant "intentionally discriminated against African-American employees, including Plaintiff, when it failed to hire qualified African-American employees as it relates to filling advertised positions for employment[,]" and that such "discrimination related to [her] employment with Defendant and she was denied the enjoyment of all benefits, privileges, terms and conditions of that e[mpl]oyment relationship because of her race."  (ECF No. 1, ¶¶ 63, 64.)  Yet, other than re-alleging and incorporating by reference the prior paragraphs of the complaint (*see* ECF No. 1, ¶ 61) – two of which allege that race and age were "motivating factors" and one of which uses the phrase "but for . . . reliance on one of the protected categories or other conduct in violation of anti-discrimination laws[,]" (ECF No. 1, ¶¶ 34, 35, 58; *see also id.*, ¶ 72) – the paragraphs comprising Plaintiff's second cause of action at most allege that Defendant "intentionally discriminated against African-American employees, including Plaintiff," or denied certain things "because of her race."  (ECF No. 1, ¶¶ 63, 64.)

Defendant argues that "Plaintiff's race discrimination . . . claims" do not satisfy Fed. R. Civ. P. 12(b)(6), because "Plaintiff alleges that race was 'a

motivating factor' in the decision not to hire Plaintiff[,]" and *Comcast Corp.*

mandates a "but for" causation standard.  (ECF No. 13, PageID.49-50.)  In her

response, Plaintiff contends she describes Defendant's "employment

discrimination against her as an intentional act, and not just a 'motivating factor' . .

. ."  (ECF No. 18, PageID.95.)  In fact, as noted above, Plaintiff unquestionably

alleges within her second cause of action that Defendant "*intentionally*

*discriminated* against African-American employees, including Plaintiff, when it

failed to hire qualified African-American employees as it relates to filling

advertised positions for employment."  (ECF No. 1, ¶ 63 (emphasis added).)  For

purposes of this report only and the analysis as to Plaintiff's § 1981 cause of

action, the Undersigned assumes, *arguendo*, that Plaintiff's use of "intentional

discrimination" is akin to an allegation of "but for" causation.  Nonetheless, as

discussed below, the key allegations within Count II (*see id*., ¶¶ 63, 64) are

conclusory.

### ii.     Additional information

Plaintiff's response also contains information that is not mentioned within

her complaint.  For example, she states that, "[i]n 2018, [she] attended and

satisfactorily completed a training seminar for Document Review Attorneys[,]"

yet, she "was never interviewed by the Defendant[,]" and "never received a letter

of rejection and/or the reasons underlying the failure to hire [her]."  (ECF No. 18,

18

PageID.95.)  She further states that "Defendant did not employ due diligence to

determine if [she] was mentally and/or physically able to work for its company[,]"

and claims to have "supplied the Defendant with credible references of prior

supervisors from other employment entities . . . ."  (*Id*.)  She also claims that, when

she was a judge, "every session was taped and videotaped," therefore, if she "could

not function because of mental disability," it would have been "readily detectable

by third parties."  (*Id*., PageID.96.)[7]  Elsewhere in her response, Plaintiff states:

> The Defendant in this case denied the Plaintiff employment
> opportunities for eight years without an explanation or any reasonable
> justification.  The Plaintiff attended and completed an employment
> training conducted by the Defendant on or about June 3, 2018.  The
> Plaintiff successfully completed the Defendant's Attorney Document
> Review training sessions, but continued to be denied employment
> opportunities by the Defendant.  The Plaintiff clearly demonstrated
> that she was qualified for employment as a Document Review
> Attorney.  *No other explanation can be provided for the Defendant's
> failure to hire the Plaintiff.*

(ECF No. 18, PageID.96 (emphasis added).)  As to the latest of these statements,

Defendant asserts that, even assuming, for the sake of argument, Plaintiff was

qualified to perform the position(s) for which she applied – a questionable or

doubtful point in the Undersigned's estimation as discussed above, in light of the

"attorney" designation attached to the position and Plaintiff's inactive status with

---

[7] *But see, In re Sanders*, 865 N.W.2d at 30 (in 2015 Michigan Supreme Court
accepting "the determination [of the Judicial Tenure Commission] that the
Respondent suffers from a mental disability that prevents the performance of her
judicial duties.")

the State Bar – Plaintiff has not alleged "a link between her protected status and the employer's action." (ECF No. 20, PageID.107.)

To be sure, Plaintiff's claims concern a period from 2014 until at least 2022 (ECF No. 1, ¶¶ 5, 9, 33, 57) and alleges that she is qualified (*see*, *e.g.*, ECF No. 1, ¶¶ 26, 55, 83), even if not within her second cause of action. However, Plaintiff does not mention training or a seminar in her pleading, let alone such training in June 2018. Nor does the complaint mention "due diligence" or "credible references." Moreover, to the extent Plaintiff's response challenges Defendant's impression of her "perceived disability" or "physical[] ab[ility]" or "mental disability," (ECF No. 18, PageID.86, 95-96), the complaint does not set forth a disability-based cause of action, *e.g.*, under the ADA or the seemingly inapplicable IDEA.

### iii.    Reasonable inference (or conclusory allegation)

Plaintiff additionally responds – although without clarity as to which cause of action – that she "only pleads facts that allow[] this Honorable Court to draw the reasonable inference that the Defendant is liable for the discriminatory misconduct." (ECF No. 18, PageID.96.) Among other things, Plaintiff states:

> The facts of the instant case plausibly give rise to an entitlement of relief. This Honorable Court can plausibly infer that the Defendant's acts of employment discrimination against the Plaintiff were intentional given the years of rejection and denial and given the fact that the Plaintiff attended and successfully completed training sessions conducted by the Defendant. The Plaintiff continues to allege and

prove through the facts offered in the Complaint, that she would have been hired "but for" her race. *There are no other factors that make sense.*

(*Id.* (emphasis added))  And, she advocates that "[a] reasonable person would be able to infer that the Defendant's hiring practices were discriminatory given the Plaintiff's credentials and the Defendant's well-developed pattern of rejecting the Plaintiff for employment over an eight-year period."  (*Id.*, PageID.97.)

By contrast, Defendant argues that Plaintiff "has failed to plead facts that could give rise to a reasonable inference that Defendant has intended to discriminate."  (ECF No. 20, PageID.105.)  In its reply, Defendant contends that Plaintiff's allegations of "intentional discrimination," (*see, e.g.*, ECF No. 1, ¶¶ 3, 55, 63, 77, 88, 92), do not sufficiently plead a Section 1981 race discrimination claim, as they are "only conclusory allegations of discriminatory intent."  (ECF No. 20, PageID.104-105.)  "A complaint that includes only conclusory allegations of discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief."  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012) (referencing *Iqbal*, 555 U.S. at 680-681).  (ECF No. 20, PageID.105.)  As the Sixth Circuit has explained, "[t]his Court is not required to accept inferences drawn by Plaintiff if those inferences are unsupported by the facts *alleged in the complaint*."  *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013) (emphasis added).

Here, even assuming that Plaintiff pleaded the proper "but for" causation *standard* with respect to Count II, her key allegations within Count II (*see* ECF No. 1, ¶¶ 63, 64) are conclusory.  Admittedly, Plaintiff alleges she is "an African American female[,]" (ECF No. 1, ¶¶ 54, 62, 76, 91), which satisfies the Section 1981 element of being "a member of a racial minority," *Burton*, 134 F. Supp. 2d at 885.  Yet, even assuming the element that "the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts, sue and be sued, give evidence, etc.)[,]" Plaintiff has not adequately alleged the element that "defendant intended to discriminate on the basis of race[.]" *Burton*, 134 F. Supp. at 885.  Nor has Plaintiff adequately alleged that the alleged discrimination happened "but for race[.]" *Comcast Corp.*, 140 S. Ct. at 1019. Plaintiff simply alleges that "Defendant intentionally discriminated against African-American employees, including Plaintiff, *when it failed to hire qualified African-American employees* as it relates to filling advertised positions for employment[,]" and "[t]hat *said discrimination* related to Plaintiff's employment with Defendant and she was denied the enjoyment of all benefits, privileges, terms and conditions of that enjoyment relationship because of her race."  (ECF No. 1, ¶¶ 63, 64 (emphases added)).  "[B]are-bones legal conclusions surrounded by 'threadbare recitals of the elements of a cause of action' cannot survive a motion to dismiss." *Moralez v. Moore*, No. 17-10567, 2018 WL 1406842, at \*4 (E.D. Mich.

Mar. 21, 2018) (Michelson, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Put another way, Plaintiff Sanders' Count II allegations "fail to provide the kind of specific facts necessary to make [her] discrimination claims plausible." *Han*, 541 F. App'x at 627.  Instead, she seems to plead a *non-sequitur*: Defendant failed to hire qualified African-Americans; therefore, *Plaintiff* was not hired because of her race.

The Court is also persuaded by Defendant's additional contention that, even taking into consideration Plaintiff's response's "litany of facts that are not in [Plaintiff's] Complaint[,]" (ECF No. 20, PageID.106) – which, presumably, includes the aforementioned, alleged satisfactory completion of a Document Review Attorney Seminar in 2018 and submission of "credible references . . . [,]" if not also the mention of disability (*see* ECF No. 18, PageID.95-96, 97-98) – those additional facts "still are not enough to allow this Court to draw reasonable inferences of an intent to discriminate."  (ECF No. 20, PageID.106.)  Preliminarily, as noted above, Plaintiff has not set forth a disability-based cause of action (*e.g.*, ADA or IDEA).  And, while the Court acknowledges that Plaintiff claims in her response that she satisfactorily completed a training seminar and submitted credible references, the Court is persuaded by Defendant's assertion that, "if being qualified, applying and interviewing [or, in Plaintiff's case, allegedly not

interviewing] but not getting a job were enough to create an inference of discrimination, many job applicants would have discrimination claims." (*Id.*)

In sum, failing to hire qualified African-American employees, whoever these unnamed potential employees may be, does not, in and of itself, equate or even lead to an inference of unlawful discrimination based on race, nor would such an inference arise solely from failing to hire qualified people of any other race. Potential employers may receive numerous applications from and reject many qualified applicants in favor of interviewing and/or hiring others who are equally or more qualified. Or, an employer may fail to hire anyone from a particular race or ethnicity because no qualified individuals from these particular ethnicities or races has applied. Whatever the case may be, it remains that Plaintiff's key allegations within Count II (*see id.*, ¶¶ 63, 64) plead a mere conclusion, not a plausible claim of discriminatory conduct. It should be dismissed for failing to state a claim on which relief can be granted.

### iv.    Leave to amend

Finally, noting Defendant's reliance upon *Comcast Corp.*, Plaintiff contends she "should be allowed to amend her Complaint to add specific 'but for' language as a part of her claims under §1981[,]" and further contends "[t]he 'but for' burden has been factually satisfied and will be satisfied during the life of [her] claims in this case." (*Id.*, PageID.96-97.) *See Comcast Corp.*, 140 S. Ct. at 1014

("Normally . . . the essential elements of a claim remain constant through the life
of a lawsuit.").

Presumably, Plaintiff is seeking *permission* to amend under Fed. R. Civ. P.
15(a)(2) ("In all other cases, a party may amend its pleading only with the
opposing party's written consent or the court's leave.  The court should freely give
leave when justice so requires.").  However, even assuming for the sake of
argument as noted above that Plaintiff's use of "intentional discrimination" is akin
to an allegation of "but for" causation, "[i]n the Sixth Circuit, courts have
repeatedly held that an informal request for leave to amend raised only in response
to a motion to dismiss is procedurally improper, and must be denied."  *U.S. ex rel.
Kreipke v. Wayne State Univ.*, No. 12-14836, 2015 WL 400970, at *2 (E.D. Mich.
Jan. 28, 2015) (Cohn, J.) (citing district court cases), *aff'd sub nom. Kreipke v.
Wayne State Univ.*, 807 F.3d 768 (6th Cir. 2015).  "[A] request to amend a
complaint should be in a separate motion, not embedded within the response
brief."  *Hill v. Oak St. Health MSO LLC*, No. CV 22-10684, 2023 WL 4206065, at
*3 (E.D. Mich. June 27, 2023) (Parker, J.) (referencing *Lewis v. Wheatley*, 528 F.
App'x 466, 469 (6th Cir. 2013)).  *See also Wright v. PNC Fin. Servs. Grp., Inc.*,
No. 13-15291, 2015 WL 4619857, at *10 (E.D. Mich. July 31, 2015) (Borman, J.)
("Plaintiff has not filed a separate motion to amend, nor has Plaintiff provided any
additional factual allegations that he would submit through an amended

complaint."); *Purnell v. CitiMortgage, Inc.*, No. 14-11107, 2015 WL 4199243, at

*11 (E.D. Mich. July 13, 2015) (Borman, J.) (same).  Finally, and even if Plaintiff

were attempting to amend as a matter of course under Fed. R. Civ. P. 15(a)(1),

there is no way for the Court to evaluate the efficacy of Plaintiff's hypothetical,

future pleading at this juncture, without supplying the entire pleading, as amended,

in compliance with E.D. Mich. LR 15.1.

### c.    <u>Count IV</u>:  Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621-634)

Plaintiff's fourth cause of action is an alleged violation of the ADEA.  (ECF

No. 1, ¶¶ 80-86; *see also id.*, ¶ 47.)  Plaintiff contends she is more than "40 years

of age[,]" her "work is good enough to meet the Defendant's legitimate

expectations[,]" and she "was well qualified for employment as a document review

attorney[,]" yet, "Defendant failed to hire [her] for any position whatsoever."  (*Id.*,

¶¶ 81-84.)  Instead, Plaintiff alleges, "Defendant preferred hiring employees of

lesser age . . . ."  (*Id.*, ¶ 85.)

The ADEA is codified at 29 U.S.C. §§ 621-634; yet, Plaintiff does not cite

any of these particular sections within her complaint.  Moreover, as Defendant

points out:

> No civil action may be commenced by an individual under this section
> until 60 days after a charge alleging unlawful discrimination has been
> filed with the Equal Employment Opportunity Commission. Such a
> charge shall be filed—

>   **(A)** within 180 days after the alleged unlawful practice occurred; or
>
>   **(B)** in a case to which section 633(b) of this title applies, within 300
>   days after the alleged unlawful practice occurred, or within 30 days
>   after receipt by the individual of notice of termination of proceedings
>   under State law, whichever is earlier.

29 U.S.C. § 626(d)(1).  (*See* ECF No. 13, PageID.35-36, 51-52.)  As Defendant

correctly notes, "Plaintiff has not alleged the filing of such a charge[.]"  (*Id.*,

PageID.52.)

   As noted above, Plaintiff counters Defendant's exhaustion argument by

citing *Perez* and the EEOC's guidance.  (ECF No. 18, PageID.98-99.)  However,

*Perez* concerned the IDEA and the ADA, neither of which is a basis for a cause of

action in Plaintiff's pleading.  (*See also* ECF No. 20, PageID.107-108.)  And, to

the extent Plaintiff was relying upon the EEOC guidance that, "[i]f your complaint

involves age discrimination, you can skip the administrative complaint process

altogether and go directly to court (as long as you give EEOC at least 30 days

written notice of your intent to go to court)[,]" *see* https://www.eeoc.gov/federal-

sector/filing-lawsuit-federal-court, the cited EEOC guidance appears to reference

Subsection (d) of the ADEA statute related to "[n]ondiscrimination on account of

age in *Federal Government* employment."  29 U.S.C. § 633a (emphasis added).

Defendant Hire Counsel is not a division of the federal government.  *See*

www.hirecounsel.com (last visited Nov. 30, 2023).  Consistent with the above

recommendation as to Counts I and III, the Undersigned recommends dismissal of

Count IV without prejudice with further direction that Plaintiff may not return to this Court to pursue an ADEA claim without evidence that she has complied with Section 626(d)(1).

### 2.    State law causes of action (Counts V & VI)

Plaintiff also sets forth state law causes of action, including race, age, and sex discrimination in violation of the ELCRA (ECF No. 1, ¶¶ 87-95 [Count V]) and intentional infliction of emotional distress (*id*., ¶¶ 96-102 [Count VI]), as to which the parties make related argument.  (ECF No. 13, PageID.53; ECF No. 18, PageID.100; ECF No. 20, PageID.108.)  If the Court concludes that Plaintiff's federal law causes of action (Counts I, II, III & IV) should be dismissed (*see* Section II.E.1), then it should decline to exercise supplemental jurisdiction over Plaintiff's state law causes of action (Counts V & VI), in accordance with 28 U.S.C. § 1367(c)(3).

### F.    Conclusion

For the reasons set forth in greater detail above in Section II.E, the Court should **GRANT** Defendant's motion to dismiss (ECF No. 13): (1) dismissing Counts I, III and IV without prejudice to refiling if administrative remedies are timely and properly exhausted; (2) dismissing Count II with prejudice on the merits; and, (3) dismissing Counts V and VI without prejudice to refiling in state court.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  November 30, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE